UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| KESHIA LATONNE BUFFALO, | 5:25-CV-05040-CCT |
| Plaintiff, | |
| vs. | **ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915 SCREENING** |
| SOUTH DAKOTA DEPARTMENT OF SOCIAL SERVICES (DSS); CHILD PROTECTIVE SERVICES (CPS); RAFINA[1] RODRIGUEZ, CPS Assessor; TAMMY OLSON, CPS Caseworker/Family Visit Coordinator; JANE BALES, Child Support Enforcement Officer; ERIN BURKE, Child Support Enforcement; NORTH DAKOTA CHILD PROTECTION SERVICES (ROUGHRIDER NORTH HUMAN SERVICE ZONE); ELIZABETH "BETH" CLIFFORD LONE EAGLE; BUDD LONE EAGLE SR.; BUDD "BUFFALO" LONE EAGLE JR.; ZORA LONE EAGLE; JERRY BAD WARRIOR; COREY, Tribal Support Services Director; CHIEF CHARLES RED CROW, Chief of Police – Walter Miner Law Enforcement Center; CHEYENNE RIVER SIOUX TRIBAL POLICE DEPARTMENT; PENNINGTON COUNTY | |

---

[1] Buffalo provides two different spellings of this defendant's name: "Rafina," *see* Docket 1 at 1, and "Rufino," *see id.* at 3. This Court uses the spelling "Rafina" as that is how Buffalo most consistently refers to this defendant. *See* Docket 1-1, at 6, 10.

| 24/7 PROGRAM; and NORTH DAKOTA CHILD SUPPORT ENFORCEMENT,<br><br>Defendants.[2] | |

Plaintiff, Keshia LaTonne Buffalo, filed a pro se lawsuit alleging violations of various federal statutes and constitutional rights. Docket 1; Docket 1-1. Buffalo also filed a motion for leave to proceed in forma pauperis, Docket 2.

## I.    Motion for Leave to Proceed In Forma Pauperis

A federal court may authorize the commencement of any lawsuit without prepayment of fees when an applicant submits an affidavit stating he or she is unable to pay the costs of the lawsuit. 28 U.S.C. § 1915(a)(1). "[I]n forma pauperis status does not require a litigant to demonstrate absolute destitution." *Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000). But in forma pauperis status is a privilege, not a right. *Williams v. McKenzie*, 834 F.2d 152, 154 (8th Cir. 1987). Determining whether an applicant is sufficiently impoverished to qualify to proceed in forma pauperis under § 1915 is committed to the sound discretion of the district court. *Cross v. Gen. Motors Corp.*, 721 F.2d 1152, 1157 (8th Cir. 1983). After review of Buffalo's financial affidavit, this Court finds that she has insufficient funds to pay the filing fee. *See* Docket 2. Thus, Buffalo's motion for leave to proceed in forma pauperis, Docket 2, is granted.

---

[2] Buffalo provides three inconsistent lists of defendants in her complaint. Docket 1 at 1, 3, 7. This Court liberally construes Buffalo's complaint and includes all the defendants she provides in each of the three lists. *See id.*

2

## II.    1915 Screening

### A.    Factual Background as Alleged by Buffalo

Buffalo's complaint centers around issues she has encountered regarding the custody of her children, the placement of her children under the Indian Child Welfare Act (ICWA), and other actions taken by various individuals, and the Department of Social Services (DSS) and Child Protection Services (CPS) in both North Dakota[3] and South Dakota. Buffalo claims she has faced "an institutional pattern of punishment[]" and "systemic neglect[,]" Docket 1-1 at 10, and that she has not received certain support services she believes she is entitled to receive. *See generally* Docket 1-1.

As background, Buffalo is an enrolled member of the Cheyenne River Sioux Tribe and is the mother of three minor children: K.B., J.B., and K. *Id.* at 2. Buffalo has full custody of her daughter, K.B. *Id.* at 2–3. Her son, J.B., is in the custody of his paternal grandmother. *Id.* at 3. Buffalo does not have custody of K. *Id.* at 3, 4.

### 1.    Facts Regarding Buffalo's Son, K.

Beginning with Buffalo's factual allegations regarding her son, K., Buffalo alleges that K. was removed by DSS and CPS[4] during a traffic stop on March 8,

---

[3] Buffalo refers to the Department of Social Services in North Dakota. *See, e.g.*, Docket 1-1 at 4, 7. This Court assumes that Buffalo is referring to North Dakota's department of Health and Human Services. *See North Dakota Health & Hum. Servs.*, https://www.hhs.nd.gov/cfs/cps (last visited Apr. 17, 2026).

[4] Although Buffalo references the North Dakota DSS at other points in her complaint, it appears that she is referring only to the South Dakota DSS when referencing the incidents involving K. *See* Docket 1-1 at 5 (specifically referencing the South Dakota DSS).

2025. *Id.* at 4. According to Buffalo, "[n]o valid emergency hearing or due process was granted before the removal." *Id.* Buffalo alleges that Tammy Olson, a DSS case worker, arranged for biweekly in-person visitations with K. in Pierre, South Dakota, but that Buffalo "receive[s] no support or reimbursement for travel from Rapid City, placing undue financial and emotional burden on [her]." *Id.* at 3. Buffalo also claims that "CPS has not made active efforts to reunify [her] family as required under 25 U.S.C. § 1912(d), nor adhered to proper placement preferences under 25 U.S.C. § 1915(b)." *Id.* at 5. According to Buffalo, K. "has been moved among at least four non-Native placements despite the presence of immediate Native family and ceremonial kinship (hookah) available and willing to assist." *Id.* Buffalo alleges that she identified these individuals who were willing to help, but that they "were never contacted by CPS," and that "their absence from all CPS assessments is a critical violation of tribal placement standards." *Id.*[5]

Buffalo alleges that she "asked for an in-person meeting to develop a family safety plan[,]" and was instead "notified after the fact that CPS worker Rafina Rodriguez scheduled a meeting for May 2, 2025—one day after [a] May 1 court hearing." *Id.* at 5–6. According to Buffalo, this delay was "tactical and obstructs timely court presentation of [her] compliance and planning." *Id.* at 6.

---

[5] Buffalo also alleges that when she was pregnant with K., her health concerns were ignored, and that Monument Health's failure to test her for cholestasis constitutes medical negligence. Docket 1-1 at 9. But Monument Health is not named as a defendant.

### 2.    Facts Regarding Buffalo's Daughter, K.B.

Buffalo alleges that her daughter, K.B., "remains under [Buffalo's] full tribal custody," and "has been labeled as a runaway without due process, and a pickup-in-place order remains active as a punitive measure." *Id.* at 5. Buffalo claims that the order "was issued without [her] consent or tribal court involvement[,]" *id.*, and that Buffalo delivered a formal letter to DSS demanding dismissal of the pickup order on April 24, 2025, *id.* at 4. In response to this letter, Buffalo alleges that she "received a duplicate court report from CPS with no new assessment or investigation[]" on April 25, 2025. *Id.* As a result of this order and K.B. being labeled as a runaway, Buffalo alleges that K.B. lost her job "not from misconduct, but because she responsibly informed her employer about the situation." *Id.* at 5. Buffalo claims that K.B. is "now emotionally impacted and further destabilized by the stigma and stress caused by CPS involvement." *Id.* As part of her request for relief, Buffalo requests that the pickup order be withdrawn. *Id.* at 6.

Buffalo also contends that K.B. "has endured significant emotional trauma, compounded by systemic failures, abuse, and neglect" by various individuals. *Id.* at 11. Buffalo alleges that Elizabeth "Beth" Clifford Lone Eagle, her husband Budd Lone Eagle Sr., and their children Budd, "Buffalo," Jr. and Zora, "were responsible for multiple abuses while [K.B.] was under their care." *Id.* Buffalo alleges that "Beth physically assaulted and psychologically controlled [her] daughter, including restricting food, bathroom use, and access to her service dog, Luxx." *Id.* According to Buffalo, Beth "unlawfully retained"

K.B.'s registered service dog, which was verified as medically necessary. *Id.* Buffalo also alleges that "Beth abandoned [K.B.] at a relative's home with no phone, no clothes, and no explanation." *Id.*

Buffalo claims these "abuses" were reported to the Walter Miner Law Enforcement Center in Eagle Butte, and also to DSS, but that "[d]espite formal complaints, no investigations were conducted[,]" and Buffalo's reports were ignored. *Id.* Buffalo states that "[t]ribal police refused to follow up[]" and that "no action was taken by Chief Charles Red Crow or other officers." *Id.*

### 3.    Destabilization and Failure to Provide Support Services

Buffalo makes a number of claims regarding various services that she alleges both the DSS and CPS[6] should have provided her with but failed to do so. Buffalo alleges that "[t]he Department of Social Services, in its entirety, has used its power to destabilize [her], block [her] independence, and build a case that benefits its own control of [her] children. They have failed to support [her], reunify [her] family, or respect [her] identity and authority as a tribal mother." *Id.* at 6.

Beginning with Buffalo's claims that she has faced various difficulties regarding housing, Buffalo alleges that DSS failed to provide her housing authority caseworker with the necessary reunification letter or proof of intent to reunify with her children. *Id.* at 2. Because Buffalo resides under a Section 8

---

[6] Buffalo makes references to the DSS and CPS in both South Dakota and North Dakota, and at times it is not clear which state agency she is referring to. *See generally* Docket 1; Docket 1-1.

housing voucher, Buffalo alleges that DSS's failure to provide the necessary documentation has resulted in Buffalo's housing stability being threatened. *Id.*

Buffalo also alleges that her "housing situation [has] included multiple motel transitions between Motel 6, Super 8, Rodeway Inn, and South Dakota Cares placements." *Id.* at 9. At one point during these transitions, Buffalo and K.B. "were left without basic access to heat, towels, or a microwave due to management abandonment." *Id.* During this time, Buffalo alleges that DSS "offered no flexibility, trauma-informed case management, or meaningful support services." *Id.*

Buffalo also claims that because she remains sanctioned under Temporary Assistance to Needy Families (TANF), Buffalo alleges that her access to any economic assistance has been blocked. *Id.* According to Buffalo, she also "asked CPS to help with [her] Verizon phone bill and to replace [K.B.'s] stolen phone—both of which are essential for CPS's own investigative and communication needs." *Id.* at 5, 7.

Additionally, Buffalo alleges that she has submitted "22 pages of drug test results from Oyate Health Center," which have all been negative, but that "CPS continues to reference a single positive patch while disregarding [her] broader medical evidence." *Id.* at 6. Buffalo alleges that "[t]his is biased, misleading, and perpetuates harm." *Id.*[7] Buffalo also alleges that she has "been

---

[7] In this section of her complaint, Buffalo also alleges that her public defender, Daniel Leon, "dismissed [her] efforts and called [her] 'rogue,' a term [Buffalo] finds offensive and degrading." *Id.* at 6. Buffalo requests that Leon be removed from her case. *Id.* But Leon is not named as a defendant. *See generally* Docket 1; Docket 1-1.

labeled by CPS staff as having used Bismarck as a delivery location to avoid a positive drug test—a claim with no medical or legal basis." *Id.* at 9–10. Buffalo alleges that "[t]hese statements by DSS staff, including Rafina Rodriguez, are damaging and rooted in discriminatory assumption." *Id.* at 10.

### 4.   Suspension of Licenses

Buffalo alleges that DSS, specifically caseworkers Jane Bales and Erin Burke, suspended Buffalo's Certified Nursing Assistant (CNA) license. *Id.* at 2. It appears that this was due to a "prior stipulation agreement[8] under Child Support Enforcement in South Dakota" being terminated, despite Buffalo's "active compliance" with this agreement. *Id.* at 7. Buffalo alleges that she "followed instructions, maintained employment, and [her] wages were garnished accordingly[,]" but that "DSS failed to manage or transfer these funds appropriately across state lines to the North Dakota DSS, resulting in license suspension, legal charges, and criminal citations." *Id.* Because of this failure in coordination, Buffalo alleges that her driver's license and CNA certification were suspended, *id.* at 5, 7, and that she is "regularly stopped, profiled, and treated as a threat[.]" *Id.* at 7. Buffalo states that this constitutes harassment and racial discrimination. *Id.* at 7–8.

---

[8] The stipulation agreement Buffalo references is ostensibly a Stipulation and Settlement Agreement that divorcing parties in South Dakota must file if they have minor children. *See Stipulation and Settlement Agreement (With Minor Children)*, Form-UJS-325, https://ujs.sd.gov/media/scpoqlz1/ujs-325-stipulation-and-settlement-agreement-with-children_02_2026.pdf (last visited Apr. 20, 2026).

### 5.    Contact Between CPS and Buffalo's School

Buffalo states that she is a full-time student at Oglala Lakota College pursuing a bachelor's degree in social work. *Id.* at 2. She is also applying for the Healthcare Professional Assistance Program (HPAP) to support the reinstatement of her CNA license. *Id.*

Buffalo alleges that CPS contacted Oglala Lakota College without a signed release of information, and that a CPS report "mentions [her] status as a full-time student, yet [she] never consented to disclosure of that information." *Id.* at 6. Buffalo states that she "revoke[s] all previously signed authorization and formally request[s] an investigation" into the communications between her school and CPS. *Id.*

### 6.    Cheyenne River Motel Incident

Buffalo alleges that her "civil rights were violated when [she] was targeted by former motel manager Jerry Bad Warrior at the Cheyenne River Motel (Holiday Inn)." *Id.* at 12. Buffalo asserts that Jerry "allegedly planted meth in [her motel] room to sabotage [her] housing access." *Id.* Buffalo states that a police report was requested, but that "none was ever provided." *Id.* According to Buffalo, Jerry was arrested for meth distribution and embezzlement within days of attempting to plant meth in Buffalo's hotel room. *Id.* Buffalo states that she has "never been banned from or disenrolled from the tribe, yet [she] continues to be denied support services." *Id.* Additionally, the General Manager of the motel "confirmed that there was no record of any incident or ban against" Buffalo and allowed Buffalo to rent a room at the motel. *Id.* Buffalo

does not allege facts that she faced any charges as a result of Bad Warrior planting meth in her room. *See id.*

Buffalo alleges that Corey, the current Director of Support Services for the tribe, continues to refuse assistance to Buffalo, presumably because of the meth-related incident involving Bad Warrior. *Id.* Buffalo states that "[t]hese actions amount to discrimination, retaliation, and denial of rights under tribal law, U.S. civil rights law, and ICWA protections. [Buffalo's] family has been set up, surveilled, profiled, and systemically oppressed. This is not a single event – this is a pattern of abuse that deserves redress." *Id.*

### 7.    Claims and Request for Relief

Buffalo brings claims under the Indian Child Welfare Act, specifically 25 U.S.C. §§ 1912(d) and 1912(b), the Due Process Clause of the Fourteenth Amendment, and Title VI of the Civil Rights Act. *Id.* at 6. She also alleges violations of tribal sovereignty law, Docket 1 at 3, the Family Educational Rights and Privacy Act (FERPA), and the Health Insurance Portability and Accountability Act (HIPAA), Docket 1-1 at 6. As a result of the defendants' actions, Buffalo claims to have suffered "wrongful removal, denial of services, financial hardship, and emotional trauma[.]" Docket 1 at 4. Buffalo "requests declaratory relief, injunctive relief to prevent further interference with parental rights, full reunification, reinstatement of services, compensation for damages and emotional distress, and investigation of systemic ICWA and civil rights violations." *Id.*

10

Additionally, Buffalo requests "an investigation into the systemic neglect [she has] experienced, removal of sanctions, acknowledgement of [her] parenting and educational efforts, and a full review of DSS practices regarding vulnerable Indigenous parents." Docket 1-1 at 10.

## B.    Legal Standard

When a district court determines a plaintiff is financially eligible to proceed in forma pauperis under § 1915(a), a court must then determine whether the complaint should be dismissed under § 1915(e)(2)(B). *Martin-Trigona v. Stewart*, 691 F.2d 856, 857 (8th Cir. 1982) (per curiam); *see also Key v. Does*, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016). A court must dismiss claims if they "(i) [are] frivolous or malicious; (ii) fail[] to state a claim on which relief may be granted; or (iii) seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A court when screening under § 1915 must assume as true all facts well pleaded in the complaint. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).

11

A district court has the duty to examine a pro se complaint "to determine if the allegations provide for relief on any possible theory." *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988) (citing *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir. 1974)). A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985) (citation omitted). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing *Twombly*, 550 U.S. at 553–63)). Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation omitted) (quoting *Twombly*, 550 U.S. at 556).

C.    **Legal Analysis**

1.    **ICWA Claims[9]**

Buffalo alleges that multiple violations of ICWA have occurred, based on a "lack of reunification efforts[] and misconduct by CPS caseworkers[]" as well as violations of "placement preferences" and a "lack[ of] cultural consideration or familial bonding efforts." Docket 1-1 at 1, 3. Under ICWA,

> Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title.

25 U.S.C. § 1914. *See also Jumping Eagle v. Warren*, No. 18-CV-4131-LLP, 2021 WL 462644, at *7 (D.S.D. Feb. 9, 2021) (holding that federal courts are courts of competent jurisdiction for § 1914). An "'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" 25 U.S.C. § 1903(4).

According to Buffalo, K.B. and J.B. are enrolled members of the Cheyenne River Sioux Tribe and K.'s tribal enrollment is pending. Docket 1-1 at 2. Buffalo states that all three children are eligible for membership under tribal statutes as Buffalo, as well as her mother, grandmother, and grandfather, are enrolled members of the Cheyenne River Sioux Tribe. *Id.*

---

[9] Buffalo also asserts that her claims arise under "[t]ribal sovereignty – jurisdiction and kinship recognition." Docket 1-1 at 6. This Court understands this to be a reference to the placement preferences and tribal involvement provisions in ICWA.

Therefore, taking Buffalo's allegations as true, all three of Buffalo's children qualify as an "Indian child" for purposes of ICWA.

### a.    Claims for Declaratory Relief Under 25 U.S.C. §§ 1912(d), 1915(b)

Buffalo requests declaratory relief for the alleged ICWA violations. Docket 1 at 1, 4; Docket 1-1 at 6. Buffalo points to two specific ICWA provisions: 25 U.S.C. §§ 1912(d) and 1915(b). Docket 1-1 at 5–6. Section 1912(d) provides that:

> Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

25 U.S.C. § 1912(d).

Through § 1914, "Congress provided a remedy for violations of §§ 1911, 1912 and 1913 of ICWA[,]" but the "substantive requirements of the ICWA are the placement provisions of the Act in 25 U.S.C. § 1915."[10] *Jumping Eagle*, 2021 WL 462644, at *5–6. Buffalo cites specifically to § 1915(b), which provides that:

> Any child accepted for foster care or preadoptive placement shall be placed in the least restrictive setting which most approximates a family and in which his special needs, if any, may be met. The child shall also be placed within reasonable proximity to his or her home, taking into account any special needs of the child. In any foster care

---

[10] To the extent that Buffalo is attempting to state a claim under the substantive requirements outlined in § 1915, "[t]he language of ICWA does not provide a private right of action for alleged violations of § 1915. Section 1914 only authorizes an action for alleged violations of §§ 1911, 1912, and 1913." *Jumping Eagle*, 2021 WL 462644, at *11 (internal citations omitted).

or preadoptive placement, a preference shall be given, in the absence of good cause to the contrary, to a placement with—

> (i) a member of the Indian child's extended family;
>
> (ii) a foster home licensed, approved, or specified by the Indian child's tribe;
>
> (iii) an Indian foster home licensed or approved by an authorized non-Indian licensing authority; or
>
> (iv) an institution for children approved by an Indian tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs.

25 U.S.C. § 1915(b).

Buffalo alleges that CPS "has not made active efforts to reunify [her] family as required under 25 U.S.C. § 1912(d), nor adhered to proper placement preferences under 25 U.S.C. § 1915(b)." Docket 1-1 at 5. Buffalo asserts that her son K. "has been moved among at least four non-Native placements despite the presence of immediate Native family and ceremonial kinship (hookah) available and willing to assist." *Id.* Because this Court cannot determine at this stage that Buffalo's claim under 25 U.S.C. § 1912(d) is wholly without merit, Buffalo's 25 U.S.C. § 1912(d) claim for declaratory relief against the South Dakota DSS and CPS survives § 1915 screening.[11]

Buffalo names a number of individuals employed at South Dakota DSS and CPS as defendants. *See* Docket 1 at 1, 3. But in the section of her

---

[11] Buffalo also names the North Dakota CPS (Roughrider North Human Service Zone) and North Dakota Child Support Enforcement (CSE) as defendants. Docket 1 at 3, 7. But in the section of her complaint regarding ICWA violations, Buffalo specifically references the South Dakota DSS and CPS. *See* Docket 1-1 at 5. Therefore, this Court liberally construes her ICWA claims as being brought only against the South Dakota DSS and CPS.

complaint referencing her ICWA claims, Buffalo does not allege how, if at all, these specific individuals were involved in violating ICWA. *See* Docket 1-1 at 5. To provide a defendant with notice as required by the Federal Rules of Civil Procedure, the plaintiff must do more than place a defendant's name in the caption. *See Mencin v. City of Troy Police*, No. 4:24-CV-852, 2024 WL 4370846, at *3 (E.D. Mo. Oct. 2, 2024) ("Simply placing a defendant's name in the caption is not enough to assert their responsibility."); *see also Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012) ("A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant."). Therefore, to the extent that Buffalo intended to assert ICWA claims against individuals employed at South Dakota DSS and CPS, her claims against them are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### b.    Claims for Money Damages

Buffalo also requests money damages. Docket 1 at 1, 4. But "[t]he ICWA does not provide for a cause of action for money damages. The only relief that can be provided is declaratory relief under the Act." *Fletcher v. Florida*, 858 F. Supp. 169, 173 (M.D. Fla. 1994); *see also McClure v. Dohmen*, No. 4:07-CV-3159, 2009 WL 801586, at *2 (D. Neb. Mar. 24, 2009) ("Plaintiff seeks damages, but such relief is not available under the Indian Child Welfare Act."); *Jackson v. Hennepin Cnty. Dep't of Hum. Res. & Pub. Health*, No. 1:22-CV-

16

00036-VMC, 2023 WL 3019013, at *1 n.6 (N.D. Ga. Jan. 19, 2023) ("ICWA does not create a private right of action for money damages[.]"). Thus, Buffalo's ICWA claims for money damages are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii)–(iii).

### 2.    Claims Arising Under § 1983

Buffalo states that she brings claims under 42 U.S.C. § 1983, Docket 1 at 7, 8, and alleges that the defendants, acting under color of state law, have violated various federal statutes and constitutional rights, *see* Docket 1 at 1; Docket 1-1 at 6.

> Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. Section § 1983 "serves as a vehicle for 'vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes.'" *Henley v. Brown*, 686 F.3d 634, 640 (8th Cir. 2012) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Therefore, a plaintiff asserting a claim under § 1983 must first demonstrate an underlying constitutional or statutory violation. *Id.* This Court will now assess whether Buffalo states cognizable claims under § 1983.

17

###### a.    Claims Against State Entities

Buffalo names the South Dakota DSS and CPS, as well as the North Dakota CPS (Roughrider North Human Service Zone) and North Dakota Child Support Enforcement as defendants. Docket 1 at 1, 3, 7.

The Eleventh Amendment bars suit against a state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought. *Cory v. White*, 457 U.S. 85, 90–91 (1982). In determining whether an entity is entitled to Eleventh Amendment immunity, the Court examines the powers and characteristics of the entity created by state law to determine if it in reality is acting as the state, the degree of local autonomy and control exercised by the entity, and whether the funds to pay an award are derived from the state treasury. *Greenwood v. Ross*, 778 F.2d 448, 453 (8th Cir. 1985) (citing *Laje v. R.E. Thomason Gen. Hosp.*, 665 F.2d 724, 727 (5th Cir. 1982)).

According to South Dakota statute, DSS was created by the state legislature. *See* SDCL § 1-36-1. DSS is an arm of the State of South Dakota and, as such, is not subject to suit under § 1983. *See Cory*, 457 U.S. at 90–91. CPS is a division of DSS and is therefore an arm of the state not amenable to suit. *See Hunter v. South Dakota Dep't of Soc. Servs.*, 377 F. Supp. 3d 964, 972 (D.S.D. 2019). Thus, Buffalo's § 1983 claims against the South Dakota DSS and CPS are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii)–(iii).

Similarly, the North Dakota CPS (Roughrider North Human Service Zone) and North Dakota Child Support Enforcement (CSE) are overseen by the North Dakota Department of Health and Human Services, which acts as the "official

18

agency of the state in the discharge of" certain functions, such as child protection services and child support matters. *See* NDCC § 50-06-01.4. Therefore, North Dakota CPS and North Dakota CSE are both arms of the state and are not subject to suit under § 1983. Thus, Buffalo's claims against North Dakota CPS and CSE are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii)–(iii).

### b.     Claims Against DSS and CPS Employees

Buffalo does not specify if she sues the individual defendants named in the complaint in their individual or official capacities, or both. *See* Docket 1; Docket 1-1. When a plaintiff does not specifically state in which capacity he or she sues the defendants, the Court must apply the course of proceedings test. *S.A.A. v. Geisler*, 127 F.4th 1133, 1138 (8th Cir. 2025) (en banc). "The fundamental question is whether the course of proceedings has put the defendant 'on notice that she was being sued in her individual capacity' and that 'her personal liability was at stake.'" *Id.* at 1139 (quoting *Daskalea v. D.C.*, 227 F.3d 433, 448 (D.C. Cir. 2000)). "[T]he underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly." *Id.* (quoting *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995)).

"Relevant factors include, but are not limited to, how early in the litigation the plaintiff first specified individual capacity claims, whether the plaintiff's complaint included a prayer for punitive damages, and whether the defendant declined to raise a qualified immunity defense." *Id.* (footnote omitted). The United States Court of Appeals for the Eighth Circuit noted that

19

"[o]ur sister circuits can offer helpful guidance." *Id.* Other circuits have considered factors such as the nature of the plaintiff's claims and whether the complaint alleges that defendant acted in accordance with a government policy or custom. *Goodwin v. Summit Cnty.,* 703 F. App'x 379, 382 (6th Cir. 2017); *Briggs,* 66 F.3d at 61. "[N]o single factor is dispositive in an assessment of the course of proceedings." *S.A.A.,* 127 F.4th at 1140 (quoting *Powell v. Alexander,* 391 F.3d 1, 22 (1st Cir. 2004)).

Here, Buffalo seeks both injunctive and monetary relief, which suggests that she intends to sue the defendants in both their individual and official capacities. *See* Docket 1 at 4; *see also Brown v. Montoya,* 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief."). Therefore, this Court deems Buffalo's complaint to allege claims against the defendants in both their individual and official capacities.

### i.    Official Capacity Claims for Monetary Relief and Individual Capacity Claims for Injunctive Relief

Buffalo seeks both monetary and injunctive relief. *See* Docket 1 at 1, 4. But "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown,* 662 F.3d at 1161 n.5; *see also Cmty. Mental Health Servs. v. Mental Health & Recovery Bd.,* 150 F. App'x 389, 401 (6th Cir. 2005) ("Just as a plaintiff cannot sue a defendant in his official capacity for money damages, a plaintiff should not be able to sue a defendant in his individual capacity for an

20

injunction in situations in which the injunction relates only to the official's job, *i.e.,* his official capacity."). Therefore, Buffalo's official capacity claims for monetary relief and individual capacity claims for injunctive relief are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii)–(iii).

### ii. Official Capacity Claims for Injunctive Relief and Individual Capacity Claims for Monetary Relief

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

*Parrish v. Ball,* 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Buffalo's individual capacity claims must allege that each individual defendant either directly participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor. *See id.*

A plaintiff's "official capacity claim for injunctive relief need only allege that each defendant, by virtue of his [or her] office, has some connection with the unconstitutional conduct for which [the plaintiff] seeks injunctive relief." *Warfield v. Hettich,* No. 4:24-CV-04049-ECS, 2025 WL 957769, at *9 (D.S.D. Mar. 31, 2025) (internal quotation omitted) (citing *Ex parte Young,* 209 U.S. 123, 157 (1908)). Buffalo requests various injunctive and declaratory relief.

21

Buffalo requests "injunctive relief to prevent further interference with parental rights, full reunification, [and] reinstatement of services." Docket 1 at 4. She also "request[s] an investigation into the systemic neglect [she has] experienced, removal of sanctions, acknowledgment of [her] parenting and educational efforts, and a full review of DSS practices regarding vulnerable Indigenous parents." Docket 1-1 at 10. Additionally, she requests "immediate oversight" and withdrawal of the pickup order for her daughter K.B. *Id.* at 6.

Therefore, Buffalo has standing to bring these claims for injunctive relief against the DSS and CPS employees named in her complaint, but she "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Warfield*, 2025 WL 957769, at *4 (quoting *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 816 (8th Cir. 2008)).

## I.    Claims Against Tammy Olson

Buffalo states that her in-person visitations in Pierre, South Dakota, with her son K. have been arranged by DSS employee Tammy Olson. Docket 1-1 at 3. The only explanation Buffalo provides regarding her claims against Olson is the following statement: "These visits are two hours long, and [Buffalo] receive[s] no support or reimbursement for travel from Rapid City, placing undue financial and emotional burden on [her]." *Id.* This statement does not provide a cognizable claim under § 1983, as Buffalo provides no facts that she is entitled to reimbursement or longer visits with her son, or that she has been denied these services in violation of a constitutional right. Although pro se

22

complaints are to be construed liberally, "they still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). Therefore, Buffalo's claims against Tammy Olson in her official capacity for injunctive relief and individual capacity for monetary relief are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

## II.    Claims Against Rafina Rodriguez

Buffalo names Rafina Rodriquez, a CPS employee, as a defendant. Docket 1 at 1. Buffalo alleges that she asked for "an in-person meeting to develop a family safety plan. Instead, [she] was notified after the fact that CPS worker Rafina Rodriguez scheduled a meeting for May 2, 2025—one day after our May 1 court hearing." Docket 1-1 at 5–6. Buffalo alleges that "[t]his delay appears tactical and obstructs timely court presentation of [her] compliance and planning." *Id.* As this Court understands her complaint, Buffalo is alleging a Fourteenth Amendment procedural due process claim based on Rodriquez's delay in notifying Buffalo about the meeting to develop a safety plan, which affected Buffalo's ability to demonstrate compliance at the May 1 court hearing.

The Fourteenth Amendment, in relevant part, provides that "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant deprived him of such an interest without due process of law." *Schmidt v. Des Moines Pub. Schs.*,

655 F.3d 811, 817 (8th Cir. 2011) (quoting *Gordon v. Hansen*, 168 F.3d 1109, 1114 (8th Cir. 1999)).

"As a general matter, parents have a liberty interest in the 'care, custody, and management of their children.'" *Swipies v. Kofka*, 419 F.3d 709, 713–14 (8th Cir. 2005) (quoting *Manzano v. South Dakota Dep't of Soc. Servs.*, 60 F.3d 505, 509–10 (8th Cir. 1995)). Therefore, to the extent that the family safety plan impacted Buffalo's ability to take part in the care, custody, and management of her children, this Court will assume for purposes of screening that she has established a liberty interest. *See Lindquist v. Taylor*, No. 24-CV-0552 (NEB/JFD), 2024 WL 1831993, at *6 (D. Minn. Apr. 16, 2024) ("to the extent that [plaintiff] claims that the "safety plan" interfered with his right to raise his children, he has likely articulated a constitutionally protected liberty interest.").

"Once a liberty interest is established, the next question is what process is due." *Smith v. McKinney*, 954 F.3d 1075, 1079 (8th Cir. 2020) (quoting *Williams v. Norris*, 277 F. App'x 647, 649 (8th Cir. 2008) (per curiam)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation omitted). Taking the well-pleaded allegations in her complaint as true, Buffalo was denied the opportunity to be heard at a meaningful time and in a meaningful manner because she was not notified about the meeting to develop a safety plan, which in turn led to her inability to demonstrate compliance at the May 1 hearing. At this time, Buffalo has

24

provided enough facts to state a plausible procedural due process violation, and her Fourteenth Amendment due process claim against Rodriguez in her individual capacity for money damages and official capacity for injunctive relief survives § 1915 screening.

### III.   Claims Against Jane Bales and Erin Burke

Buffalo alleges claims against Jane Bales and Erin Burke, both DSS Child Support Enforcement caseworkers. Docket 1-1 at 2. Buffalo alleges that her CNA license and driver's license were suspended[12] due to Burke and Bales terminating a prior stipulation agreement. *Id.* at 7. Buffalo alleges that she "was not notified when [her] stipulation was terminated[,]" and that she "followed instructions, maintained employment, and [her] wages were garnished accordingly[,]" but that DSS "failed to manage or transfer these funds appropriately across state lines to the North Dakota DSS, resulting in license suspension, legal charges, and criminal citations." *Id.* According to Buffalo, this failure to transfer funds "directly caused a cascade of driving under revocation charges[]" and she "was continually pulled over and charged." *Id.* Buffalo alleges that "CPS in South Dakota failed to coordinate with their own DSS counterparts to address these barriers, even after [she] requested

---

[12] Buffalo provides that "[n]otably, her [CNA] license was not revoked due to any drug or felony conviction, but was suspended by the Department of Social Services (DSS) Child Support Enforcement, specifically by caseworkers Jane Bales and Erin Burke." Docket 1-1 at 2.

their support in restoring [her] driver's license, [her] CNA license, and [her] HPAP application." *Id.*

Liberally construing her complaint, Buffalo is alleging a Fourteenth Amendment procedural due process violation based on the lack of notice she received before the termination of the stipulation agreement and the subsequent suspension of her CNA license and driver's license. As discussed above, "[t]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Smith*, 954 F.3d at 1079 (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). "Once a liberty interest is established, the next question is what process is due." *Id.* (quoting *Williams*, 277 F. App'x at 649).

Buffalo has a liberty interest in her CNA license and driver's license. *See Bell v. Burson*, 402 U.S. 535, 539 (1971) ("Once [driver's] licenses are issued, . . . their continued possession may become essential in the pursuit of a livelihood . . . [and they] are not to be taken away without that procedural due process required by the Fourteenth Amendment.") (citation omitted)); *Barry v. Barchi*, 443 U.S. 55, 64 (1979) (holding that a plaintiff had a property interest in a professional license "sufficient to invoke the protection of the Due Process Clause.").

Because Buffalo has a colorable claim to a liberty interest in her driver's license and CNA license, the Court must consider what process is due before suspension of these licenses. *Smith*, 954 F.3d at 1079. "The fundamental

requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333. According to SDCL § 25-7A-56.1, "[a] circuit court may revoke, suspend, or restrict a person's drivers, professional, occupational, sporting, or recreational license if the person owes past-due support, or if the person, after receiving appropriate notice, fails to comply with a subpoena or warrant relating to a paternity or child support proceeding." Buffalo alleges that she "was not notified when [her] stipulation was terminated[,]" and as this Court understands her complaint, this means she did not receive notice before her licenses were suspended either. Docket 1-1 at 7. Accepting as true Buffalo's allegations, Buffalo has established a plausible procedural due process violation, and her Fourteenth Amendment claims against Burke and Bales in their official capacities for injunctive relief and individual capacities for monetary relief survive § 1915 screening.

**c.    Claims Against Non-State Actors**

Buffalo brings claims against Jerry Bad Warrior, a private individual, for "plant[ing] meth" in Buffalo's hotel room in order to "sabotage" Buffalo's housing access. *Id.* at 12. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). A private individual may be characterized as a state actor "if, though only if, there is such a close nexus between the State and the

27

challenged action that seemingly private behavior may be fairly treated as that of the State itself.*" Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (citation modified). Therefore, a private party may be held liable under § 1983 if the private party "is a willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980). "[A] plaintiff seeking to hold a private party liable under § 1983 must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993). Conclusory allegations of conspiracy are insufficient. *Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988).

Here, Buffalo alleges no facts demonstrating that Bad Warrior was a participant in joint action with the state, or that there existed such a close nexus between the state and Bad Warrior such that Bad Warrior's action could be fairly attributed to the state. Therefore, Buffalo's claims against Bad Warrior are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

Buffalo also names Elizabeth Clifford Lone Eagle, Budd Lone Eagle, Sr., Budd "Buffalo" Lone Eagle, Jr., and Zora Lone Eagle as defendants, stating that these individuals "were responsible for multiple abuses while [Buffalo's daughter] was under their care." Docket 1-1 at 11. As this Court understands Buffalo's complaint, these individuals were members of Buffalo's daughter's foster family. As stated above, "[t]o state a claim under § 1983, a plaintiff must

28

allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West*, 487 U.S. at 48.

The United States Court of Appeals for the Eighth Circuit has recognized that "foster parents are generally not considered agents of the state." *United States v. Peneaux*, 432 F.3d 882, 896 (8th Cir. 2005) (collecting cases). While "courts have consistently held that the decisions of foster parents are not state action[,]" "nothing *precludes* foster parents from being state actors in any given case[]" and the foster parent's status as a possible state actor "depends on the facts of the case." *Anderson v. Nebraska*, No. 4:17-CV-3073, 2018 WL 3009115, at *8 & n.9 (D. Neb. June 15, 2018) (collecting cases).

"[F]or a private party to fall within the scope of § 1983 as a state actor, the State must have so far insinuated itself into a position of interdependence with the charged party that it must be recognized as a joint participant in the challenged activity[.]" *P.G. v. Ramsey Cnty.*, 141 F. Supp. 2d 1220, 1226 (D. Minn. 2001) (quoting *Milburn v. Anne Arundel Cnty. Dep't of Soc. Servs.*, 871 F.2d 474, 477 (4th Cir. 1989)). The inquiry as to whether a foster parent acts as a state actor is "necessarily fact-bound[,]" and courts consider whether the actions at issue were more closely related to state action or "parental decisions[.]" *See Anderson*, 2018 WL 3009115, at *10–11 (finding that foster parents were not state actors when "nothing is alleged to connect [the foster parents'] actions to the state, as opposed to routine, discretionary child care decisions.").

29

Here, nothing in Buffalo's complaint suggests that an exception should apply to the generality that foster parents are not considered state actors. Buffalo does not allege any facts that connect the foster family's actions to the state or suggest that the actions alleged are anything other than parental decisions. Therefore, because Elizabeth Clifford Lone Eagle, Budd Lone Eagle, Sr., Budd "Buffalo" Lone Eagle, Jr., and Zora Lone Eagle are not state actors, Buffalo's § 1983 claims against them are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### d.    Claims Against Cheyenne River Sioux Tribal Police Department

Buffalo names the Cheyenne River Sioux Tribal Police Department ("CRST PD") as a defendant.[13] Docket 1 at 3. The CRST PD is a tribal agency that enforces the Cheyenne River Sioux Tribe's criminal laws and is engaged in exercising inherent tribal sovereignty functions. *See Roemen v. United States*, 463 F. Supp. 3d 990, 1003–04 (D.S.D. 2020) (discussing *Whiting v. Martinez*, No. 15-CV-3017-RAL, 2016 WL 297434 (D.S.D. Jan. 22, 2016)). As the law enforcement agency for the Cheyenne River Sioux Tribe, the CRST PD functions as an "arm of the tribe[.]" *Stathis v. Marty Indian Sch. Bd. Inc.*, 560 F. Supp. 3d 1283, 1291, 1294 (D.S.D. 2021). Because the CRST PD is an "arm of

---

[13] Buffalo also refers to the Walter Miner Law Enforcement Center. *See* Docket 1 at 1, 3; *see also* Docket 1-1 at 11. This is the name of the building where the CRST PD is located. *See Law Enforcement Department*, Cheyenne River Sioux Tribe, https://www.cheyenneriversioux.com/law-enforcement-department (last visited Apr. 9, 2026); *see also* Docket 1 at 6.

30

the tribe," a suit against the CRST PD is essentially a suit against the tribe itself.

"The Supreme Court has long distinguished Indian tribes from territories and states." *Nygaard v. Taylor*, 602 F. Supp. 3d 1172, 1190 (D.S.D. 2022), *aff'd*, 78 F.4th 995 (8th Cir. 2023). *See also Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014). Tribes, as a general rule, are not state actors. *Archambault v. United States*, 641 F. Supp. 3d 636, 648 (D.S.D. 2022). As such, § 1983 suits are inappropriate vehicles to bring claims against tribes. *See Stanko v. Oglala Sioux Tribe*, 916 F.3d 694, 696 (8th Cir. 2019) ("The district court properly rejected Stanko's contention that Congress expressly authorized § 1983 suits against Indian tribes."); *see also Will v. Mich. Dept. of State Police*, 491 U.S. 58, 67 (1989) (reasoning that "in enacting § 1983, Congress did not intend to override well-established immunities or defenses under the common law").

Even if Buffalo could bring suit against CRST PD under § 1983, her claims against CRST PD are barred by sovereign immunity. As stated above, CRST PD is an arm of the tribe, entitled to sovereign immunity. *Stathis*, 560 F. Supp. 3d at 1293. Sovereign immunity bars suits "absent a clear waiver by the tribe or congressional abrogation." *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 509 (1991) (citation omitted). "Any waiver of tribal sovereign immunity must be 'unequivocal.'" *Wilson v. Dep't of Interior*, No. 5:22-CV-5094, 2023 WL 4868415, at *2 (D.S.D. July 31, 2023)

31

(quoting *Rupp v. Omaha Indian Tribe*, 45 F.3d 1241, 1244 (8th Cir. 1995)), *aff'd*, 2024 WL 4492083 (8th Cir. May 24, 2024).

Here, Buffalo alleges nothing to suggest that Congress has authorized Buffalo's suit or that the Cheyenne River Sioux Tribe has waived sovereign immunity. Thus, "absent a clear waiver by the tribe or congressional abrogation[,]" sovereign immunity bars Buffalo's claims against CRST PD. *Okla. Tax Comm'n*, 498 U.S. at 509. Thus, Boyd's claims against the CRST PD are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(b)(ii).

### e.    Claims Against Corey

Buffalo also attempts to bring claims against Corey, "the current Director of Support Services for the tribe," because he "continues to refuse assistance[,]" which Buffalo claims constitutes "discrimination, retaliation, and denial of rights[.]" Docket 1-1 at 12.

As stated above, "[a] suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent." *Stanko*, 916 F.3d at 697 (quoting *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 n.2 (1997)). Because Buffalo states that Corey is the "current Director of Support Services for the tribe," her official capacity claims against Corey are effectively claims against the Cheyenne River Sioux Tribe. As discussed above, claims against the tribe are barred by sovereign immunity. Therefore, Buffalo's official capacity claims against Corey are also barred by sovereign immunity and dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

32

Regarding Buffalo's claims against Corey in his individual capacity, she fails to allege anything more than conclusory allegations. Buffalo states that Corey's refusal of assistance to Buffalo "amount[s] to discrimination, retaliation," and the denial of various rights. Docket 1-1 at 12. But even if this Court were to liberally construe her complaint as alleging a violation of her Fourteenth Amendment equal protection rights, her claims would fail.

While Buffalo mentions racial discrimination at other points during her complaint, *see id.* at 3, 8, Buffalo does not state that Corey discriminated against her based on her race, gender, or any other suspect classification. *See id.* at 12. Instead, it appears that Corey "continues to refuse assistance" to Buffalo because of the meth-related incident involving Jerry Bad Warrior. *Id.* Buffalo also does not allege any facts "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment[,]" as she might in a "class of one" equal protection claim. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). While pro se complaints are given a liberal construction, "they still must allege sufficient facts to support the claims advanced." *Stone*, 364 F.3d at 914. This Court is not required to supply additional facts for a pro se plaintiff, nor construct a legal theory that assumes facts which have not been pleaded. *Id.* Therefore, Buffalo's claims against Corey in his individual capacity are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 3.    State-Law Claims Against Chief Charles Red Crow

Buffalo alleges that when she reported the abuse of her daughter K.B. by her foster family to law enforcement, "no action was taken by Chief Charles Red Crow or other officers. Despite formal complaints, no investigations were conducted." Docket 1-1 at 11. This Court liberally construes Buffalo's claims against Chief Red Crow as state-law negligence claims.

The provisions of SDCL Chapter 26-8A govern protection of children from abuse or neglect. Under SDCL § 26-8A-3, a law enforcement officer "who has reasonable cause to suspect that a child under the age of eighteen has been abused or neglected as defined in § 26-8A-2 shall report that information in accordance with §§ 26-8A-6, 26-8A-7, and 26-8A-8." SDCL § 26-8A-3. Upon receipt of a report of child abuse, "the Department of Social Services or law enforcement officers shall investigate." SDCL § 26-8A-9.

Because "[i]mmunity is critical to South Dakota's evident public policy of protecting the reporting and investigation of child abuse without fear of reprisal," *B.W. v. Meade Cnty.*, 534 N.W.2d 595, 597 (S.D. 1995), SDCL § 26-8A-14 provides for immunity from liability in reporting or investigating child abuse in certain circumstances:

> Any person or party participating in good faith in the making of a report . . . pursuant to §§ 26-8A-3 to 26-8A-8, inclusive, or pursuant to any other provisions of this chapter, is immune from any liability, civil or criminal, that might otherwise be incurred or imposed[] . . . Immunity also extends in the same manner . . . to public officials or employees involved in the investigation and treatment of child abuse or neglect[.]

34

SDCL § 26-8A-14. The Supreme Court of South Dakota noted that "negligence and good faith are not equivalent. . . . Acting in good faith denotes performing honestly, with proper motive, even if negligently." *B.W.*, 534 N.W.2d at 598; *see also Cotton v. Stange*, 582 N.W.2d 25, 29 (S.D. 1998) (finding that the defendants were entitled to immunity under SDCL § 26-8A-14 because even though their conduct "might amount to negligence[,]" it did "not equate with bad faith.").

Here, at most, Buffalo's claims against Chief Red Crow amount to negligence. *See* Docket 1-1 at 11. Buffalo provides no facts that Chief Red Crow did not act in good faith or acted without a proper motive. *See id.* Therefore, statutory immunity applies to Chief Red Crow under SDCL § 26-8A-14, and Buffalo's state-law negligence claims against him are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(2).[14]

### 4.    Federal Tort Claims Act

Buffalo asserts claims under the Federal Tort Claims Act (FTCA) in order to "seek redress and accountability for the emotional distress, rights violations,

---

[14] Buffalo also does not provide notice that she complied with SDCL § 3-21-2, which provides a statutory notice requirement for damages:

> No action for the recovery of damages for personal injury, property damage, error, or omission or death caused by a public entity or its employees may be maintained against the public entity or its employees unless written notice of the time, place, and cause of the injury is given to the public entity as provided by this chapter within one hundred eighty days after the injury.

SDCL § 3-21-2.

racial discrimination, and state neglect inflicted upon [her] family." *See* Docket 1-1 at 3. The Federal Tort Claims Act ("FTCA") permits recovery of money damages from the United States for certain torts caused by government employees acting within the scope of their duties. 28 U.S.C. § 1346(b)(1).

Buffalo does not specify whom she brings FTCA claims against. *See generally* Docket 1, Docket 1-1. But because the FTCA only applies to federal employees, and not state employees, *see* 28 U.S.C. § 1346(b)(1), this Court liberally construes Buffalo's complaint to assert FTCA claims only against federal employee defendants. In some situations, tribal employees like Corey or Chief Red Crow may be considered federal employees for purposes of the FTCA. *See Hinsley v. Standing Rock Child Protective Servs.*, 516 F.3d 668, 672 (8th Cir. 2008) ("Tort claims against tribes, tribal organizations, or their employees, that arise out of the tribe or tribal organization carrying out a self-determination contract, are considered claims against the United States and are covered to the full extent of the FTCA."). But determining whether Corey or Chief Red Crow are federal employees is not necessary here because Buffalo provides no facts that she has complied with the FTCA's exhaustion requirement.

"The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993). Exhaustion involves a "presentment requirement," which requires that the plaintiff "shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the

agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). "Conformity with the presentment requirement is necessary for federal courts to have subject matter jurisdiction over a subsequent action." *A.M.L. ex rel. Losie v. United States*, 61 F.4th 561, 564 (8th Cir. 2023) (citing *Mader v. United States*, 654 F.3d 794, 805 (8th Cir. 2011) (en banc)).

The presentment requirement of § 2675(a) "is jurisdictional and must be pleaded and proven by the FTCA claimant." *Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993). The presentment requirement serves to "provide[] federal agencies a fair opportunity to meaningfully consider, ascertain, adjust, determine, compromise, deny, or settle FTCA claims prior to suit." *Mader*, 654 F.3d at 800–01. Balancing these two interests, a claimant satisfies the presentment requirement for purposes of § 2675 when the claim includes "(1) sufficient information for the agency to investigate the claims, . . . and (2) the amount of damages sought[.]'" *Farmers State Savs. Bank v. Farmers Home Admin.*, 866 F.2d 276, 277 (8th Cir. 1989) (citations omitted) (collecting cases). Buffalo has not provided any facts showing that she has satisfied the presentment requirement. *See generally* Docket 1; Docket 1-1. Therefore, any claims Buffalo intended to assert under the FTCA are dismissed for lack of subject-matter jurisdiction.

### 5.    Title VI Claims Under the Civil Rights Act

Buffalo alleges that a violation of Title VI of the Civil Rights Act occurred based on "Racial discrimination." Docket 1-1 at 6.

37

Title VI of the Civil Rights Act of 1964 prohibits race discrimination in any program receiving federal funds and provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "Private individuals may sue to enforce this aspect of Title VI and obtain both damages and injunctive relief." *Ash v. City of Duluth*, 331 F. Supp. 3d 935, 939 (D. Minn. 2018) (citing *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001)). "To demonstrate a Title VI claim, Plaintiff must show that race, color, or national origin motivated the defendant's discriminatory conduct." *K.R. ex rel. Proctor v. Duluth Pub. Sch. Acad.*, 591 F. Supp. 3d 418, 428 (D. Minn. 2022).

Here, Buffalo contends that Corey, the Director of Support Services for the Cheyenne River Sioux Tribe, "continues to refuse assistance" to Buffalo, and that "[t]hese actions amount to discrimination[.]" Docket 1-1 at 12. Buffalo also alleges that "compounded failures by both South Dakota and North Dakota DSS[,]" such as the termination of her stipulation agreement without notice, led to her being "regularly stopped, profiled, and treated as a threat – not as a mother in recovery and renewal. I believe this constitutes harassment and racial discrimination." *Id.* at 8–9. Additionally, Buffalo claims that statements made by Rodriguez that Buffalo attempted to avoid a positive drug test by using Bismark as a delivery location "are damaging and rooted in discriminatory assumption." *Id.* at 9–10. As this Court understands her

complaint, these statements have affected Buffalo's ability to receive certain services from DSS and CPS.

Buffalo's allegations, however, are conclusory. Although she broadly references racial discrimination, *see* Docket 1-1 at 3, 8, Buffalo does not provide any facts showing that that race, color, or national origin motivated any of the defendants' allegedly discriminatory conduct. Because courts "are not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Twombly*, 550 U.S. at 555 (quotation omitted), Buffalo's Title VI claims are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 6.    FERPA and HIPAA Claims

Buffalo alleges claims under the Family Educational Rights and Privacy Act (FERPA), stating that CPS engaged in "improper contact" with her school without her authorization. Docket 1-1 at 6. But there is no private right of action under FERPA. *Dukuly v. Rives-East*, No. 4:18-CV 04040-KES, 2018 WL 3598528, at *2 (D.S.D. July 26, 2018) (a plaintiff "cannot bring a claim under FERPA because the statute does not give rise to a private right of action." (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002)); *see also Duncan v. Belmont Univ.*, No. 2:24-CV-04172-WJE, 2025 WL 359326, at *6 n.2 (W.D. Mo. 2025) ("The Eighth Circuit has also held that FERPA does not create a private right of action." (citing *Missouri Child Care Ass'n v. Cross*, 294 F.3d 1034, 1040 n.8 (8th Cir. 2002)), *aff'd*, 2025 WL 2494707 (8th Cir. May 13, 2025).

39

Buffalo also attempts to bring a claim under the Health Insurance Portability and Accountability Act (HIPAA) and appears to be asserting that her medical information was improperly shared with her school. *See* Docket 1-1 at 6. But there is no private right of action under HIPAA. *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *see also Borella v. Black Hills Surgical Hosp. L.L.P.*, No. 5:24-CV-05079-KES, 2025 WL 1928074, at *5 (D.S.D. July 14, 2025). HIPAA "specifically indicates that the Secretary of [Health and Human Services] shall pursue the action against an alleged offender, not a private individual." *Logan v. Dep't of Veteran Affs.*, 357 F. Supp. 2d 149, 155 (D.D.C. 2004).

Because there is no private right of action for claims arising under FRPA and HIPAA, Buffalo's FRPA and HIPAA claims are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 7.    Claims Against Pennington County 24/7 Program

It appears that Buffalo may have intended to name the Pennington County 24/7 Program as a defendant. *See* Docket 1 at 7 (listing the 24/7 Program as one of the defendants located in Pennington County). But the only other mention Buffalo makes of the Pennington County 24/7 Program is the statement "I also engage in 24/7 Sobriety Monitoring, which I fund personally at $50 biweekly." Docket 1-1 at 2. Buffalo fails to make any specific allegations against this defendant or provide any insight as to what claims she intended to assert against the 24/7 Program. "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is

40

properly dismissed, even under the liberal construction to be given pro se complaints." *Mencin*, 2024 WL 4370846, at *3 (quoting *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974)). Therefore, any claims Buffalo intended to assert against the Pennington County 24/7 Program are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 8.    Claims Asserted on Behalf of K.B.

As a final matter, Buffalo appears to be asserting claims on behalf of her daughter, K.B. *See* Docket 1-1 at 5 (alleging that as a result of K.B. being labeled as a runaway and the subsequent pickup order, K.B. lost her job "not from misconduct, but because she responsibly informed her employer about the situation."). To the extent that Buffalo is attempting to bring claims on behalf of K.B., she may not do so as a pro se plaintiff. The Eighth Circuit has held that "[n]on-attorney parents cannot litigate *pro se* on behalf of their minor children, even if the minors cannot bring the claim themselves." *Crozier for A.C. v. Westside Cmty. Sch. Dist.*, 973 F.3d 882, 887 (8th Cir. 2020) (citing *Myers v. Loudoun Cnty. Pub. Schs.*, 418 F.3d 395, 401 (4th Cir. 2005)). Because Buffalo is unable to litigate pro se on behalf of her minor child, any claims Buffalo attempts to assert on behalf of K.B. are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

41

## III.    Conclusion

Thus, it is ORDERED:

1.    That Buffalo's motion for leave to proceed in forma pauperis, Docket 2, is granted.

2.    That Buffalo's ICWA claim under 25 U.S.C. § 1912(d) against the South Dakota DSS and CPS for declaratory relief survives § 1915 screening.

3.    That Buffalo's ICWA claims against individuals employed at South Dakota DSS and CPS are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

4.    That Buffalo's ICWA claims for money damages are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii)–(iii).

5.    Buffalo's claims against the South Dakota DSS and CPS, as well as against the North Dakota CPS and CSE, are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii)–(iii).

6.    That Buffalo's official capacity claims for monetary relief and individual capacity claims for injunctive relief under 42 U.S.C. § 1983 are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii)–(iii).

7.    That Buffalo's claims against Tammy Olson, in her official capacity for injunctive relief and individual capacity for monetary relief, are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

8.  That Buffalo's Fourteenth Amendment due process claim against Rafina Rodriguez in her individual capacity for money damages and official capacity for injunctive relief survives § 1915 screening.

9.  That Buffalo's Fourteenth Amendment due process claim against Erin Burke and Jane Bales, in their official capacities for injunctive relief and individual capacities for monetary relief, survives § 1915 screening.

10. That Buffalo's § 1983 claims against Jerry Bad Warrior, Elizabeth Clifford Lone Eagle, Budd Lone Eagle, Sr., Budd "Buffalo" Lone Eagle, Jr., and Zora Lone Eagle are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

11. That Buffalo's § 1983 claims against the CRST PD are dismissed without prejudice under 28 U.S.C. §1915(e)(2)(b)(ii).

12. That Buffalo's § 1983 claims against Corey, in both his individual and official capacity, are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(b)(ii).

13. That Buffalo's state-law claims against Chief Charles Red Crow are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(b)(ii).

14. That any claims Buffalo intended to assert under the Federal Tort Claims Act are dismissed for lack of subject-matter jurisdiction

43

15. That Buffalo's Title VI claims are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

16. That Buffalo's FERPA and HIPAA claims are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

17. That any claims Buffalo intended to assert against the Pennington County 24/7 Program are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

18. That any claims Buffalo attempts to assert on behalf of K.B. are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

19. That all other claims are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

20. That the Clerk shall send five blank summons forms and United States Marshal Service Forms (Form USM-285) to Buffalo so that she may complete the forms and cause the complaint to be served upon Defendants South Dakota DSS, South Dakota CPS, Rafina Rodriguez, Erin Burke, and Jane Bales.

21. That Buffalo shall complete and send the Clerk of Court a separate summons and USM-285 form for each defendant. Upon receipt of the completed summonses and USM-285 forms, the Clerk of Court will issue the summonses. If the completed summonses and USM-285

44

forms are not submitted as directed within 30 days of the date of this order, the action may be dismissed for failure to prosecute.

22. That the United States Marshal Service shall serve the completed summonses, together with a copy of the complaint, Docket 1 and Docket 1-1, and this order, upon Defendants South Dakota DSS, South Dakota CPS, Rafina Rodriguez, Erin Burke, and Jane Bales.

23. That the defendants will serve and file an answer or responsive pleading to the complaint on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3).

Dated May 12, 2026.

BY THE COURT:

/s/ *Camela C. Theeler*
CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE

45